UNITED STATES OF AMERICA,

                    Plaintiff,         Case No. _____

     v.

                                       **COMPLAINT**

WILLIAM J. CARROLL
1762 Virginia Street
Racine, WI 53405,

3990 Las Vegas Blvd N
TRLR 284
Las Vegas, NV 89115-0556

                    Defendants.

Comes now the plaintiff, the United States of America, by Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Carter B. Stewart, Assistant United States Attorney for said District, and for its cause of action alleges that:

1.     This is a civil action brought by the United States of America under 28 U.S.C. §1345.

2.     The United States seeks to foreclose a reverse mortgage between William J. Carroll and the Department of Housing & Urban Development ("HUD"). For reverse mortgages, payment of the debt is made not by monthly payments, but rather by the sale of the mortgaged premises.

3.     William J. Carroll executed and delivered to James B. Nutter & Company a promissory note dated June 7, 2008, attached hereto as Exhibit A.

4.     To secure said note, William J. Carroll executed and delivered to James B. Nutter & Company, its successors and assigns, a Fixed Rate Mortgage dated June 7, 2008, attached as

Exhibit B.

5.      On July 28, 2011, James B. Nutter & Company assigned their interest in the Note and Mortgage to Sun West Mortgage Company, Inc., a copy of which is hereto annexed as Exhibit C.

6.      Said mortgage was assigned to the Secretary of Housing and Urban Development on April 8, 2014.   A copy of the assignment is annexed as Exhibit D.

7.      William J. Carroll also executed and delivered to the Secretary of Housing and Urban Development a Fixed Rate Second Mortgage dated June 7, 2008 to secure the reverse mortgage.   A copy of the second mortgage is annexed as Exhibit E.

8.      On or about July 27, 2017, William J. Carroll notified HUD that he was no longer residing at the property.   That action placed the mortgage in default status in violation of paragraph 9(a)(iii) of the mortgage, which states that, the "Lender may require immediate payment in full if the property ceases to be the principal residence of borrower other than death…"   A copy of the notification from William J. Carroll is annexed as Exhibit F.

9.      Under the terms of the above notes and mortgages, default occurred on or about July 27, 2017.   Consistent with said terms and default, full and immediate payment is due and demanded. William J. Carroll does not reside at the mortgaged property, but rather either at 1761 Virginia Street, Racine, WI or 3990 Las Vegas Blvd N, TRLR 284, Las Vegas, NV.   The mortgaged property is vacant.

10.      William J. Carroll being in default, plaintiff served upon him a Notice of Intent to Foreclose and Accelerate Mortgage Balance, a copy of which is hereto annexed as Exhibit G.

11.      William J. Carroll owes the Plaintiff under the provisions of the notes, and mortgages a balance of $235,387.09 as of November 18, 2019.   A Statement of Account is

attached hereto as Exhibit H.

12. Plaintiff has made the following payments as permitted by the provisions of said mortgages that have become a part of the mortgage indebtedness.

Service fee (monthly fee)          $ 4,140.00
MIP (insurance)                    $10,395.91

WHEREFORE, plaintiff prays that an accounting be taken under the direction of this Court of what is due for principal and interest on the notes and mortgages and that a decree be entered as follows:

(a)     That the defendant pay to plaintiff the principal of $105,249.16 and interest of $115,602.02, together with interest from November 18, 2019 at the rate of $45.95 per day computed as provided in the notes and mortgages up to the date on which the decree is entered, plus interest thereafter according to law, costs, disbursements, and expenses;

(b)     Or in default of such payment, that all legal right, title, and interest that defendant has in the property described in said mortgages be sold at public sale in accordance with 28 U.S.C. §§2001-2003, inclusive, and that the amounts due to plaintiff be paid out of the proceeds of the sale pursuant to the lien priority of its mortgages;

(c)     That the defendants and all persons claiming or who may claim by, from, or under it be absolutely barred and foreclosed from all rights and equity of redemption in the property,

(d)     That if the proceeds of the sale exceed the sum of money to be paid to plaintiff, any such excess be deposited with the Clerk of this Court subject to further orders of the Court;

(e)     For such other and further relief as is just.

Dated at Milwaukee, Wisconsin this 14th day of February, 2020.

MATTHEW D. KRUEGER

United States Attorney

By    *s/Carter B. Stewart*

CARTER B. STEWART
Assistant United States Attorney
Wisconsin State Bar No. 1117543
Office of the United States Attorney
Federal Building, Room 530
517 East Wisconsin Avenue
Milwaukee, Wisconsin   53202
Telephone:   (414) 297-1700
Fax: 414-297-4394
carter.stewart@usdoj.gov



**FIXED RATE NOTE**
**(HOME EQUITY CONVERSION)**

Certified to be a True and Correct
Copy of the Original
Sun West Mortgage Company

By: _____

STATE OF WI

June 07, 2008

PROPERTY ADDRESS

FHA Case Number: 581-3042674-951-255
Loan Number: 43113

1762 VIRGINIA STREET
RACINE, WI 53405
Racine COUNTY

**1. DEFINITIONS**
"Borrower" means each person signing at the end of this Note. "Lender" means James B. Nutter & Company and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
In return for amounts to be advanced by Lender up to a maximum principal amount of Two Hundred Twenty-Five Thousand and 00/100 Dollars ($225,000.00), to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated June 07, 2008 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advances by Lender, plus interest, if not paid earlier, are due and payable on June 14, 2080. Interest will be charged on unpaid principal at the rate of Six and 625/1000 percent (6.625%) per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month and shall likewise thereafter bear interest.

**3. PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
(A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 6 of this Note.

(B) Place
Payment shall be made at 4153 Broadway, Kansas City, MO 64111 or at such other place as Lender may designate in writing by notice to Borrower.

(C) Limitation of Liability
Borrower shall have no personal liability for payment of this Note. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If the Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**5. BORROWER'S RIGHT TO PREPAY**
A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 10 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance.

Prepayment amounts will not be made available to Borrower and prepayments will not increase the amount available to Borrower for Loan Advances.

**6. IMMEDIATE PAYMENT IN FULL**
(A) Death or Sale
Lender may require immediate payment in full of all outstanding principal and accrued interest if:
  (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

  (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) retains a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).

THIS IS CERTIFIED TO BE
A TRUE AND CORRECT COPY

_James B. Nutter & Company_

JAMES B. NUTTER & COMPANY

**Exhibit A**



**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

> (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

> (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

> (iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**7. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**10. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:
This Note is assigned to the Secretary; or

> (ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

> (i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 6 of this Note; or

> (ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_William J. Carroll_        6-7-08

WILLIAM J. CARROLL (Borrower)        Date



61-00889234

Drafted BY Bridgette Villamor
James B. Nutter & Company
4153 Broadway
Kansas City, MO 64111
FHA Case Number: 581-3042674-951-255
43113

APN: 276-0000-22-323-009

Return To:
Lenders First Choice
1785 Voyager Ave
Simi Valley, CA 93063

Document #:  2180409
Date: 07-02-2008 Time:  10:30:17 Pages: 10
Fee: $29.00 County: Racine State:  WI
Requesting Party:  Lenders First Choice
Register of Deeds:  James A. Ladwig
**The above recording information verifies
this document has been electronically
recorded and returned to the submitter**

_____[Space Above This Line For Recording Data]_____

# FIXED RATE MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on June 07, 2008. The Mortgagor is **WILLIAM J. CARROLL, A SINGLE PERSON** whose address is **1762 VIRGINIA STREET, RACINE, WI 53405** ("Borrower"). This Security Instrument is given to James B. Nutter & Company which is organized and existing under the laws of Missouri, and whose address is 4153 Broadway, Kansas City, MO 64111. Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note up to a maximum principal amount of **Two Hundred Twenty-Five Thousand and 00/100 Dollars ($225,000.00)**; (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on the occurrence of any of the events described in Paragraph 15 below. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Racine County, Wisconsin:

The real property located at the address 1762 VIRGINIA STREET, RACINE, WI 53405, in the county of Racine, state of WI, described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.　**Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2.　**Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to

Wisconsin 1st Mortgage

Certified to be a True and Correct
Copy of the Original
Sun West Mortgage Company
By: _____

**Exhibit B**

Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3.     Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4.     Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5.     Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Wisconsin 1st Mortgage

2

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.    **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.    **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.    **Grounds for Acceleration of Debt.**
    (a)    **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

    (b)    **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

        (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii) An obligation of the Borrower under this Security Instrument is not performed.

    (c)    **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9(a)(ii) and (b) occur.

Wisconsin 1st Mortgage

3

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

    (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii) Pay the balance in full; or

    (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within 8 months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 8 months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**
    (a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits

Case 2:20-cv-00239   Filed 02/14/20   Page 4 of 10   Document 1-2

the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

    **(b)   Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

    **(c)   Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one more of the actions set forth above within ten (10) days of the giving of notice.

**13.   Relationship to Second Security Instrument.**

    **(a)   Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

    **(b)   Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

        (i)  This Security Instrument is assigned to the Secretary; or

        (ii)  The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

    If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

    **(c)   Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

        (i)  Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

        (ii)  Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

Wisconsin 1ˢᵗ Mortgage

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all

Wisconsin 1ˢᵗ Mortgage

Case 2:20-cv-00239   Filed 02/14/20   Page 6 of 10   Document 1-2

expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable Law to Borrower and to the other persons prescribed by applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

21.    **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

23.    **Accelerated Redemption Periods.** If the property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church , or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

24.    **Attorneys Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

25.    **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

26.    **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

| | Condominium Rider | | PUD Rider |
| --- | --- | --- | --- |
| | Shared Appreciation Rider | | Other |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Wisconsin 1ˢᵗ Mortgage

7

Witnesses: _____

_____

Signature: _____

*William J. Carroll*

**WILLIAM J. CARROLL**

State of ~~Wisconsin~~ *NEVADA* )
~~Racine County~~ *CLARK COUNTY* )

This instrument was acknowledged before me on **June 07, 2008** by **WILLIAM J. CARROLL** name(s) of person(s)).

_____ (Signature of notarial officer)
(Seal, if any)

**JASON MATTINGLY**
Notary Public State of Nevada
No. 03-82884-1
My appt. exp. June 6, 2011

Wisconsin 1ˢᵗ Mortgage

8

## EXHIBIT A

Exhibit A to the Mortgage given on **June 07, 2008,** by **WILLIAM J. CARROLL, A SINGLE PERSON** ("Borrower") to **James B. Nutter & Company** ("Lender"). The Property is located in the county of **Racine**, state of **WI**, described as follows:

### Description of Property

Legal Description attached hereto as 'Exhibit A' and by this reference made a part hereof.

**EXHIBIT "A"**

THE FOLLOWING DESCRIBED REAL ESTATE IN RACINE COUNTY, STATE OF WISCONSIN (THE "PROPERTY"):

LOT 9, BLOCK 1, FREELAND SUBDIVISION, ACCORDING TO THE RECORDED PLAT THEREOF. SAID LAND BEING IN THE CITY OF RACINE, RACINE COUNTY, WISCONSIN.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY ASSESSOR AS 276-0000-22-323-009; SOURCE OF TITLE IS BOOK 3578, PAGE 464 (RECORDED 11/08/02)

Recording requested by: LSI
When recorded return to :
**Custom Recording Solutions**
5 Peters Canyon Road Suite 200
Irvine, CA 92606 WI3 7602083
800-756-3524 Ext. 5011

SUN WEST MORTGAGE COMPANY, INC.
18303 GRIDLEY ROAD
CERRITOS, CA 907035401

CASE#: 581-3042674-951-255
LN#: 1111010063-00

NOTE:- After having been recorded, this Assignment should be kept with the Note and Deed of Trust hereby assigned.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

Sun West Mortgage Company, Inc. 18303 Gridley Road, Cerritos, Ca 90703

all beneficial interest under that certain Deed of Trust dated    JUNE   07, 2008        executed by
**WILLIAM J CARROLL, A SINGLE PERSON.**

| | | | | , Trustor ; |
|---|---|---|---|---|
| to   COMMONWEALTH LAND TITLE COMPANY | | | | , Trustee ; |
| and recorded   07/02/2008, in book | Page | of | Instrument # 2180409 | |
| in the Office of the County Recorder of | RACINE | | , WISCONSIN | |

A. P. Number 276-0000-22-323-009

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust/Mortgage including the right to have reconveyed, in whole or in part the real property described therein.

DATED this  28th  day of  July, 2011

STATE OF  Missouri
COUNTY OF  ~~Jefferson~~ Clay                        SS.
On  7-28-2011  before me, Stacey L Thomas
personally appeared   Chuck Couch
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

Signature  Stacey L Thomas

Notary Public in for said State
This instrument was prepared by: Chuck couch
JAMES B NUTTER AND COMPANY
4153 BROADWAY
KANSAS CITY, MO 64111

JAMES B NUTTER AND COMPANY

BY: _____

Chuck Couch
**Assistant Vice President**

STACEY L. THOMAS
Notary Public - Notary Seal
STATE OF MISSOURI
Clay County
My Commission Expires: Oct. 14, 2014
Commission # 10029434

(This area for official notarial seal)

Form: Assignment of Deed of Trust/Mortgage (Investor)
Loan No: 1111010063-00
@Mortgagesoft∞OnLine
The SMART edge
www.xldynamics.com

LC: ASNINV          FN: ASNINV
KW: ASSIGNMENT INV  SK: 03/25/2008

**Exhibit C**

## EXHIBIT "A"

THE FOLLOWING DESCRIBED REAL ESTATE IN RACINE COUNTY, STATE OF WISCONSIN (THE "PROPERTY"):

LOT 9, BLOCK 1, FREELAND SUBDIVISION, ACCORDING TO THE RECORDED PLAT THEREOF. SAID LAND BEING IN THE CITY OF RACINE, RACINE COUNTY, WISCONSIN.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY ASSESSOR AS 276-0000-22-323-009; SOURCE OF TITLE IS BOOK 3578, PAGE 464 (RECORDED 11/08/02)

## ASSIGNMENT OF MORTGAGE

Recording Requested By:
Sun West Mortgage Company, Inc
Prepared By: Nicole Moriera
800-453-7884
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Case Nbr:  29054830
Ref Number:  111101006300
Tax ID:  276-0000-22-323-009
Property Address:
1762 VIRGINIA STREET
RACINE, WI 53405
W10-AM  29054830  E  3/21/2014

TYSON FETTES
RACINE COUNTY
REGISTER OF DEEDS
Fee Amount: $30.00
Pages: 1

581-3042674

This space for Recorder's use

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 18303 GRIDLEY ROAD CERRITOS, CA 90703 does hereby grant, sell, assign, transfer and convey unto SECRETARY OF HOUSING AND URBAN DEVELOPMENT (HUD) whose address is 451 SEVENTH STREET, S.W, WASHINGTON, DC 20410 all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary:  JAMES B. NUTTER & COMPANY
Mortgagor(s):  WILLIAM J. CARROLL, A SINGLE PERSON
Date of Mortgage:  6/7/2008
Original Loan Amount:  $225,000.00
Recorded in Racine County, WI on: 7/2/2008, book N/A, page N/A and instrument number 2180409

Property Legal Description:
THE FOLLOWING DESCRIBED REAL ESTATE IN RACINE COUNTY, STATE OF WISCONSIN (THE "PROPERTY"): LOT 9, BLOCK 1, FREELAND SUBDIVISION, ACCORDING TO THE RECORDED PLAT THEREOF, SAID LAND BEING IN THE CITY OF RACINE, RACINE COUNTY, WISCONSIN. FOR INFORMATIONAL PURPOSES ONLY; THE APN IS SHOWN BY THE COUNTY ASSESSOR AS 276-0000-22-323-009; SOURCE OF TITLE IS BOOK 3578, PAGE 464 (RECORDED 11/08/02)

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
4/8/14

SUN WEST MORTGAGE COMPANY, INC

Witness:
Perla Montelongo

By: _____
Sydney Fernandez
Authorized Representative

State of California
County of Los Angeles

On 4/8/19 before me, Christina Hornsby, Notary Public, personally appeared Sydney Fernandez, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public:  Christina Hornsby          (Seal)
My Commission Expires:  3/22/18

Exhibit D

 
## FIXED RATE SECOND NOTE
### (HOME EQUITY CONVERSION)

STATE OF WI

June 07, 2008

**PROPERTY ADDRESS**

1762 VIRGINIA STREET
RACINE, WI 53405
Racine COUNTY

FHA Case Number: 581-3042674-951-255
Loan Number: 43113

### 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender up to a maximum principal amount of **Two Hundred Twenty-Five Thousand and 00/100 Dollars ($225,000.00)**, to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **June 07, 2008** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advances by Lender, plus interest, if not paid earlier, are due and payable on **June 14, 2080**. Interest will be charged on unpaid principal at the rate of **Six and 625/1000 percent (6.625%)** per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month and shall likewise thereafter bear interest.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or the "Second Security Instrument". The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Second Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Second Note were executed.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 6 of this Note.

**(B) Place**
Payment shall be made at the Office of the Housing - FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, Department of Housing and Urban Development, 451 Seventh Street, S.W., Washington, DC 20410, or any other place designated by the Secretary in writing by notice to the Borrower.

**(C) Limitation of Liability**
Borrower shall have no personal liability for payment of this Note. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

### 5. BORROWER'S RIGHT TO PREPAY
A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance.

Prepayment amounts will not be made available to Borrower and prepayments will not increase the amount available to Borrower for Loan Advances.

### 6. IMMEDIATE PAYMENT IN FULL
**(A) Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) retains a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).



*581-3042674*



**(B)    Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C)    Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D)    Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**7.    WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**10.    RELATIONSHIP TO FIRST NOTE**

**(A)    Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Second Note to the Secretary.

**(B)    Relationship of Secretary Payments to First Note**

All Payments made by the Secretary shall be included in the debt due under this Note unless:

(i)    The First Note is assigned by its holder to the Secretary; or

(ii)    The Secretary accepts reimbursements by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

*William J. Carroll*                                    6-7-08
**WILLIAM J. CARROLL (Borrower)**                         Date

Drafted By: Bridgette Villamor
James B. Nutter & Company
4153 Broadway
Kansas City, MO 64111
FHA Case Number: 581-3042674-951-255
43113

APN: 276-0000-22-323-009

Return To:
Lenders First Choice
1785 Voyager Ave
Simi Valley, CA 93063

Document #: 2180410
Date: 07-02-2008 Time: 10:30:23 Pages: 10
Fee: $29.00 County: Racine State: WI
Requesting Party: Lenders First Choice
Register of Deeds: James A. Ladwig
**The above recording information verifies
this document has been electronically
recorded and returned to the submitter**

[Space Above This Line For Recording Data]

# FIXED RATE SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on June 07, 2008. The Mortgagor is **WILLIAM J. CARROLL, A SINGLE PERSON** whose address is 1762 **VIRGINIA STREET, RACINE, WI 53405.** This Security Instrument is given to the SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 Seventh Street, S.W., Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **Two Hundred Twenty-Five Thousand and 00/100 Dollars ($225,000.00);** (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, id due and payable on the occurrence of any of the events described in Paragraph 15 below. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with power of sale, the following described property located in Racine County, Wisconsin:

The real property located at the address 1762 **VIRGINIA STREET, RACINE, WI 53405,** in the county of **Racine,** state of **WI,** described more fully on Exhibit A attached to this Mortgage.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood

Wisconsin 2nd Mortgage

Case 2:20-cv-00239 Filed 02/14/20 Page 1 of 10 Document 1-5 **Exhibit E**

and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3.     Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4.     Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) and shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5.     Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Wisconsin 2nd Mortgage

2

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fees") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.      **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7.      **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.      **Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

9.      **Grounds for Acceleration of Debt.**

   (a)    **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

      (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

      (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property),(c) a life estate in the Property; or

      (iii)  The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

      (v)    For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

      (v)    An obligation of the Borrower under this Security Instrument is not performed.

   (b)    **Notice to Lender.** Borrower shall notify the Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

   (c)    **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

      (i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

Wisconsin 2nd Mortgage

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory

Wisconsin 2nd Mortgage

4

to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

13. **Relationship to First Security Instrument.**

    (a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

    (b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

        (i) The First Security Instrument is assigned to the Secretary; or

        (ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

    If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

    (c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

        (i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

        (ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

    (d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

    (e) **estrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

Wisconsin 2nd Mortgage

ℓ

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable Law to Borrower and to the other persons prescribed by applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Paragraph 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

21. **Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to

Wisconsin 2nd Mortgage

6

Case 2:20-cv-00239   Filed 02/14/20   Page 6 of 10   Document 1-5

the full amount secured by the First Security Instrument.

**22.    Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23.    Accelerated Redemption Periods.** If the property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church , or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**24.    Attorneys Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

**25.    Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**26.    Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | Condominium Rider | | PUD Rider |
|---|---|---|---|
| | Shared Appreciation Rider | | Other |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:    _____

              _____

Signature:

*William J. Carroll*

**WILLIAM J. CARROLL**

Case 2:20-cv-00239   Filed 02/14/20   Page 7 of 10   Document 1-5

State of ~~Wisconsin~~ *NEVADA*    )
~~Racine~~ County  *CLARK*    )

This instrument was acknowledged before me on **June 07, 2008** by **WILLIAM J. CARROLL** (name(s) of person(s)).

_____ (Signature of notarial officer)

(Seal, if any)

JASON MATTINGLY
Notary Public State of Nevada
No. 03-82884-1
My appt. exp. June 6, 2011

Wisconsin 2nd Mortgage

8

## EXHIBIT A

Exhibit A to the Mortgage given on **June 07, 2008,** by **WILLIAM J. CARROLL, A SINGLE PERSON** ("Borrower") to the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, S.W., Washington, D.C. 20410, ("Lender" or "Secretary"). The Property is located in the county of **Racine,** state of **WI,** described as follows:

### Description of Property

Legal Description attached hereto as 'Exhibit A' and by this reference made a part hereof.

Wisconsin 2nd Mortgage

9

**EXHIBIT "A"**

THE FOLLOWING DESCRIBED REAL ESTATE IN RACINE COUNTY, STATE OF WISCONSIN (THE "PROPERTY"):

LOT 9, BLOCK 1, FREELAND SUBDIVISION, ACCORDING TO THE RECORDED PLAT THEREOF. SAID LAND BEING IN THE CITY OF RACINE, RACINE COUNTY, WISCONSIN.

FOR INFORMATIONAL PURPOSES ONLY: THE APN IS SHOWN BY THE COUNTY ASSESSOR AS 276-0000-22-323-009; SOURCE OF TITLE IS BOOK 3578, PAGE 464 (RECORDED 11/08/02)

7-27-17          FHA CASE # 581-304 2674

NOVAD MANAGEMENT CONSULTANTS
2401 NW 23RD ST. - SUITE LA1
OKLAHOMA CITY, OK. 73107

RE: "LETTER IN LIEU OF FORECLOSURE"
(MY PHONE CALL WITH YOUR SPECIALIST "TIER"?)
PLEASE SEND SOMEONE TO SECURE
THE RESIDENCE I HAVE ABANDONED
AT 1262 VIRGINIA ST., RACINE, WI. 53405,
I AM SENDING YOU THIS LETTER IN
LIEU OF FORECLOSURE SINCE YOU HOLD
THE REVERSE MORTGAGE ON THE
PROPERTY AND HAVE AGREED TO ACCEPT IT.

I WILL BE LIVING IN MY CAR FOR THE
IMMEDIATE FUTURE BUT YOU CAN REACH
ME ON MY CELL PHONE AT 702-5044646,
OR BY MAIL AT 1761 VIRGINIA ST.,
RACINE, WI. 53405 THIS IS A FRIENDS HOME
AND I WILL LEAVE THE KEYS THERE,

Novad Management Consulting, LLC

THANK YOU                    JUL 3 1 2017
WILLIAM J. CARROLL RECEIVED 7-27-2017
William J. Carroll
1761 VIRGINIA ST.
RACINE, WI. 53405

**Exhibit F**

W. J. Carroll
1762 Virginia St
Racine, Wis 53405

MILWAUKEE WI 530
27 JUL 2017 PM 4 L



Novad Mgmt, C Novad Management Consulting, LLC
2401 NW 23 RD. ST.
SUITE 1 A1                    JUL 3 1 2017
OKLA. CITY, OK RECEIVED



CERTIFIED MAIL – RETURN RECEIPT REQUESTED

**NOTICE OF INTENT TO FORECLOSE
AND ACCEDLERATE MORTGAGE BALANCE**

August 23, 2018

**WILLIAM J CARROLL
1761 VIRGINIA ST
RACINE, WI 53405**

| | |
|---|---|
| **PROPERTY ADDRESS:** | **1762 VIRGINIA ST** |
| | **RACINE, WI 53405** |
| **FHA CASE NUMBER:** | 581-3042674 |
| **AMOUNT OF THE DEBT:** | $206,314.96 |
| **PAST DUE AMOUNT:** | $206,314.96 |
| **NAME OF THE CREDITOR:** | US DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT |

Dear **WILLIAM J CARROLL,**

The Secretary of the United States Department of Housing and Urban Development is the holder of the first mortgage and note on the above premises.

As of the date of the notice, THE MORTGAGE IS IN DEFAULT STATUS due to violation of (9)(b)(i):

**THE PROPERTY CEASES TO BE THE PRINCIPAL RESIDENCE FOR REASONS OTHER THAN DEATH AND THE PROPERTY IS NOT THE PRINCIPAL RESIDENCE OF AT LEAST ONE OTHER BORROWER.**

The amount required to pay off the outstanding balance in full by **SEPTEMBER 22, 2018** is **$208,491.37**. This payment must be in the form of a cashier's check or certified check made payable to the Secretary of Housing and Urban Development (HUD).

All funds MUST BE RECEIVED not later than THIRTY (30) DAYS from the date of this letter, and must be forwarded to:

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
2401 NW 23RD STREET, SUITE 1A1
OKLAHOMA CITY, OK  73107
ATTN:  FORECLOSURE DEPARTMENT

If you do not pay the amount specified in paragraph 2 WITHIN 30 Days from the date of this letter or tender a deed-in-lieu of foreclosure as noted in paragraph 4 below, we will accelerate the mortgage obligation (declare the entire mortgage due and payable immediately). We will do this without further demand and instruct our attorney to start foreclosure proceedings

Novad Management Consulting, LLC  ● 2401 N.W. 23rd Street, Suite 1A1  ● Oklahoma City, OK 73107
[P]  (877) 622-8525          [F]   (800) 489-1733

**Exhibit G**



We will consider accepting a deed-in-lieu of foreclosure provided the property is free or can be freed of any liens or encumbrances other than the Secretary-held mortgage.

It is essential that you contact me directly at (877) 622-8525, should you have any questions or for additional counseling assistance.

In addition and if you wish, the Department of Housing and Urban Development offers free counseling through approved counseling agencies. The counseling agencies offer services such as budget management, debt management, and related counseling services. You may take advantage of this service anytime during the entire term of the mortgage. For housing counseling assistance call 1.800.569.4287.

Sincerely,

HECM Housing Counselor
NOVAD Management Consulting

*Esta Carta es muy mportante, si no entiende el contenido de la misma, favor de obtener una traduccion lo antes possible. Para su conveniencia, nuestros consejeros ofrecen sus sericios en Enpanol y con gusto le pueden asistir.*

Novad Management Consulting, LLC • 2401 N.W. 23rd Street, Suite 1A1 • Oklahoma City, OK 73107
[P] (877) 622-8525    [F]    (800) 489-1733

Case 2:20-cv-00239   Filed 02/14/20   Page 2 of 3   Document 1-7

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

O F F I C I A L   U S E

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$                581-3042674

Sent To
William J Carroll
Street and Apt. No., or PO Box No.
1101 Virginia St
City, State, ZIP+4®
Racine WI 53405

7017 1450 0002 2706 9603

PS Form 3800, April 2015 PSN 7530-02-000-6047    See Reverse for Instructions

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

O F F I C I A L   U S E

Certified Mail Fee
$
Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $
Postage
$
Total Postage and Fees
$                581-3042674

Sent To
William J Carroll
Street and Apt. No., or PO Box No.
1101 Virginia St
City, State, ZIP+4®
Racine WI 53405

7017 1450 0002 2706 9603

PS Form 3800, April 2015 PSN 7530-02-000-6047    See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
William Carroll
1101 Virginia St
Racine WI 53405

9590 9402 3298 7196 7038 47

2. Article Number *(Transfer from service label)*
7017 1450 0002 2706 9603

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                            ☐ Agent
                             ☐ Addressee
B. Received by *(Printed Name)*     C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| | HUD Field Office |
|---|---|

| To HUD/OFFICE OF GENERAL COUNSEL | 1. FHA Case Number 581-3042674 | 2. Account Number 581-3042674 |
|---|---|---|
| | 3. Mortgagor/Owner WILLIAM J CARROLL | 4. Social Security Number XXX-XX-1883 |
| | 5. Co-Mortgagor | 6. Social Security Number |

| 7. Name of original mortgagor if different from above | 8. Property Address 1762 VIRGINIA ST RACINE WI 53405 |
|---|---|

---

## Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance $105,249.16 | Escrow Balance | Interest Rate 6.625% | Term |
|---|---|---|---|---|
| Type of mortgage HECM | Last payment applied | Date | Date of oldest unpaid Interest Installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

Please Note: The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

| Part 2. Assumption Information / Bring Current Information | | Part 3. Payoff Information | |
|---|---|---|---|
| Other mortgage is to be assumed by: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard Insurance coverage. | | Principal Balance | $105,249.16 |
| | | Interest Due | $115,602.02 |
| **Bring Current Amount** | | Service Charge | $4,140.00 |
| Principal | $105,249.16 | Late Charge | |
| Interest | $115,602.02 | Returned Check Charge | |
| Tax Escrow Required | | Advance Amount | |
| Service Charge | $4,140.00 | Tax Escrow Applied | |
| Late Charge | | Other (specify) MIP | $10,395.91 |
| Tax Advance | | Interest on Advances | |
| Other (specify) MIP | $10,395.91 | Taxes Paid but Not Posted | |
| Total to Bring Current as of: 11/18/2019 | $235,387.09 | Total Payoff Amount as of: 11/18/2019 | $235,387.09 |
| Current Monthly Payment Principal and Interest | | Per Diem Service Charge | |
| Tax Escrow | | Per Diem Interest | $45.95 |
| Service Charge | | | |
| Total Monthly Payment See back of page if mortgage is 235 | | | |

| Prepared by ASHANTA TUCKER | Title CASH MANAGEMENT | Date 11/18/2019 |
|---|---|---|

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by DAVID DAVIS | Title CASH MANAGEMENT | Date 11/18/2019 |
|---|---|---|

form HUD-698 (1/89)

**Exhibit H**

**Sensitive Information:** The information collected on this form is considered sensitive and is protected by the Privacy Act. The Privacy Act requires that these records be maintained with appropriate administrative, technical, and physical safeguards to ensure their security and confidentiality. In addition, these records should be protected against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom the information is maintained.

**If the Mortgage is receiving subsidy**

Anniversary date _____

Date of last recertification _____

Monthly subsidy _____

Mortgagor's payment _____

Full mortgage payment _____

**Affidavit as to Status of Account**

State of OKLAHOMA _____

County of OKLAHOMA _____

On this 19 _____ day of (mm/yyyy) 11/2019 ,

personally appeared before me, the undersigned attesting officer, HEATHER CAMPBELL _____ ,

who being sworn on oath, says that he/she is the LOAN SERVICING MANAGER _____

of the Department of Housing and Urban Development, a duly constituted agency of the United States of America, that he/she is duly authorized to make this affidavit; that the foregoing statement was prepared from the books and records of the Department of Housing and Urban Development on 11/19/2019 _____ , and that affidavit has cusody of the said books and records and to the best of his/her knowledge and belief the foregoing statement correctly reflects the status of the account as of 11/19/2019 _____ .

Sworn and Subscribed before me this 19 _____ day of 11/2019 _____

Notary Public

> **JAMES H. MATTHEWS**
> Notary Public
> State of Oklahoma
> Commission #19010460 Exp: 10/16/23

_Jams A. Mitt_
11/19/2019

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box: ☐ Green Bay Division ☐ Milwaukee Division

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff

*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excl. Veterans) | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.**        **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

           (b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

           (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

 **II.**        **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.**        **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**        **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**        **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**        **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.        Example:        U.S. Civil Statute: 47 USC 553
                                                                Brief Description: Unauthorized reception of cable service

**VII.**        **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases**.  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.